**Danna J. Cotman, Esq. (SB# 188245)**
**danna@arciplaw.com**
**Ariel J. Sabban, Esq. (SB# 189414)**
**ariel@arciplaw.com**
**ARC IP Law, PC**
**5749 La Jolla Boulevard**
**La Jolla, CA 92037**
**Telephone: (858) 729-0800**
**Telecopier: (858) 777-5425**

Attorneys for Plaintiffs XTERMITE, INC.
and XT 2000, Inc.

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| XTERMITE, INC., a California corporation; and XT 2000, INC., a California corporation, | Case No.: **'24 CV2317 GPC DEB** |
| Plaintiffs, | **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF FOR TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114, UNFAIR COMPETITION UNDER 15 U.S.C. § 1125, CYBERPIRACY UNDER 15 U.S.C. § 1125, UNFAIR COMPETITION UNDER B&P § 17200, FALSE ADVERTISING UNDER B&P § 17500, AND UNJUST ENRICHMENT** |
| vs. | |
| VINCENT EDWARD CHARGUALAF; ERMALENE DENISE CHARGUALAF, JR.; XT TERMITE CONTROL CORPORATION, a California Corporation; HAFA ADAI TERMITE AND PEST SOLUTIONS INCORPORATED, a California Corporation, and DOES 1 through 40, inclusive, | |
| Defendants. | **JURY TRIAL DEMANDED** |

Plaintiffs XTERMITE, INC. ("XTERMITE") and XT 2000, Inc. ("XT-2000") (collectively "Plaintiffs"), for their Complaint, allege as follows:

### INTRODUCTION

1.     This is an action for Trademark Infringement of Plaintiffs' federally registered Trademarks and Service Marks, Unfair Competition, and Cyberpiracy under the Lanham Act, and Unfair Competition, False Advertising, and Unjust Enrichment under California State law.

2.     Plaintiffs seek a preliminary injunction, permanent restraining order,

compensatory damages, imposition of a constructive trust for improperly acquired profits, and injunctive relief as well as costs and attorney's fees.

3.    Plaintiffs XTERMITE and XT-2000 are each California corporations organized and existing under the laws of the State of California with their principal places of business in San Diego County, California.

4.    On information and belief, defendant VINCENT EDWARD CHARGUALAF ("Mr. CHARGUALAF") is, and at all times relevant to this action was, an individual residing and/or conducting business in San Diego County, California.

5.    On information and belief, defendant ERMALENE DENISE CHARGUALAF, JR. ("Ms. CHARGUALAF") is, and at all times relevant to this action was, an individual residing and/or conducting business in San Diego County, California.  (Defendants Mr. CHARGUALAF and Ms. CHARGUALAF are collectively referred to herein as the "CHARGUALAFS").

6.    On information and belief, XT TERMITE CONTROL CORPORATION ("XTCC") is, and at all times relevant to this action was, a California corporation organized and existing under the laws of the State of California with its principal place of business in San Diego County, California.

7.    On information and belief, HAFA ADAI TERMITE AND PEST SOLUTIONS INCORPORATED ("HATP") is, and at all times relevant to this action was, a California corporation organized and existing under the laws of the State of California with its principal place of business in San Diego County, California.

8.    The true names and capacities of defendants sued herein under Code of Civil Procedure ("C.C.P.") § 474 as DOES 1 through 40, inclusive, and each of them, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names.  Plaintiffs will seek to amend this Complaint to set forth the true names and capacities of said fictitiously named defendants when the names and

capacities of said fictitiously named defendants have been fully ascertained.  Each of the fictitiously named defendants is responsible in some manner for the events and occurrences herein alleged, and Plaintiffs' injuries as herein alleged were directly and proximately caused by the conduct, acts, and/or omissions of said defendants.  (The above defendants are collectively referred to herein as "Defendants.")

9.     At all times herein mentioned, each of the defendants, including fictitiously named defendants, was and is the agent, servant, representative, fiduciary, independent contractor, partner, joint venturer, alter ego, accessory, accomplice, aider, abettor, confederate, co-conspirator, and/or employee of each or some of the other co-defendants, and in doing those acts herein referred to, was acting within the scope of their authority as such agent, servant, representative, fiduciary, independent contractor, partner, joint venturer, alter ego, accessory, accomplice, aider, abettor, confederate, co-conspirator and/or employee, with the express and/or implied approval, permission, knowledge, consent and ratification of all said co-defendants.

## JURISDICTION AND VENUE

10.    This Court has subject matter jurisdiction under 15 United States Code ("U.S.C.") § 1121 of the Lanham Act, and under 28 U.S.C. §§ 1338 and 1367.

11.    This Court has personal jurisdiction over Defendants because, on information and belief, Defendants operate within the State of California and/or have otherwise made or established contacts within the State of California sufficient to permit the exercise of personal jurisdiction.

12.    The Southern District of California is a proper venue pursuant to 28 U.S.C § 1391(b)(2) because a substantial part of the acts or omissions giving rise to Plaintiffs' claims occurred in this Judicial District.

/ / /

**GENERAL ALLEGATIONS**

13.     Plaintiffs XTERMITE and XT-2000 are, respectively, a pest control service company, and a pesticide manufacturing company.  Although separate corporations, they work closely with one another, sharing the same owners, corporate leadership, and counsel.  Plaintiffs are the original developers of "Orange Oil," a naturally occurring pesticide, extracted from orange peels, for use against infestations of termites, wood boring beetles, and carpenter ants.

14.     Plaintiff XTERMITE is the owner of the service mark contained within U.S. Registration Number 7,302,834 for "XTERMITE" in connection with various Pest Control Services in International Class 037 and various Home Inspection Services in International Class 042 (the "XTERMITE Mark").  The XTERMITE Mark has been in continuous use in U.S. Commerce since at least 1998 per 15 U.S.C. § 1127 of the Lanham Act.  The XTERMITE Mark is registered on the Principal Register and is in full force and effect.

15.     Plaintiff XT-2000 is the owner of the trademark contained within U.S. Registration Number 7,015,397 for "XT-2000" in connection with "Pesticides" in International Class 005 (the "XT-2000 Mark").  The XT-2000 Mark has been in continuous use in U.S. Commerce since at least 2003 per 15 U.S.C. § 1127 of the Lanham Act.  The XT-2000 Mark is registered on the Principal Register and is in full force and effect.

16.     Plaintiff XT-2000 is the owner of the trademark contained within U.S. Registration Number 4,694,335 for the words "XT-2000 – ORANGE OIL PLUS –" (with the wording "ORANGE OIL" disclaimed) beneath a design of an exterminator using an orange-shaped pesticide container with two citrus leaves emerging from the top as follows:



COMPLAINT

in connection with "Pesticides" in International Class 005 (the "MAN AND ORANGE Mark").  The MAN AND ORANGE Mark has been in continuous use in U.S. Commerce since at least 2009 per 15 U.S.C. §1127 of the Lanham Act. The XT-2000 Mark is registered on the Principal Register and is in full force and effect.  (The above trademarks are collectively referred to herein as "Plaintiffs' Marks.")

17.     Defendant Mr. CHARGUALAF formally worked for Plaintiffs for approximately one month in or around May 2023, and thus he was inevitably exposed to Plaintiffs' Marks, but his employment with Plaintiffs was eventually terminated for cause.

18.     On or about May 7, 2024, defendant Mr. CHARGUALAF registered for himself a Fictitious Business Name ("FBN") of "XT TERMITE CONTROL" with San Diego County.

19.     On or about May 13, 2024, a GoDaddy.com, LLC ("GoDaddy") domain registrar account in the name of defendant Mr. CHARGUALAF registered the domain name of "xttermite.net."

20.     In obtaining, the domain name of "xttermite.net," defendant Mr. CHARGUALAF made the following representations to GoDaddy (bold added):

> By applying to register a domain name, or by asking us to maintain or renew a domain name registration, you hereby represent and warrant to us that (a) the statements that you made in your Registration Agreement are complete and accurate; (b) **to your knowledge, the registration of the domain name will not infringe upon or otherwise violate the rights of any third party**;… .  (hereinafter the "GoDaddy Misrepresentations")

However, because of defendant Mr. CHARGUALAF's former employment with Plaintiffs, he was fully aware of Plaintiffs and Plaintiffs' Marks before registering the domain name of "xttermite.net" and therefore he knowingly made false representations to GoDaddy.

21.     Shortly thereafter, Defendants created a website on the xttermite.net domain name to advertise pest control services under the name "XT TERMITE CONTROL."  The phrase "XT TERMITE CONTROL" in this context serves as a

common law trademark as, upon the filing of this action, it is not the subject of any state or federal trademark applications, but nonetheless serves as a source indicator of Defendants' provided services (Defendants' usage of the phrase "XT TERMITE CONTROL" is hereinafter referred to as Defendants' "Common Law Word Mark").

22.     The domain name of xttermite.net and Defendants' Common Law Word Mark are each remarkably similar to Plaintiffs' XTERMITE Mark and XT-2000 Mark.  Both the xttermite.net domain name and Defendants' Common Law Word Mark incorporate the literary elements of Plaintiffs' Marks (Defendants' Common Law Word Mark merely adds the descriptive wording "CONTROL" but is otherwise just a combination of the two).  When considered in the context of Defendants' providing pest control services, which overlaps with Plaintiffs' providing pest control services and pesticides, there is a likelihood of confusion between the Defendants' Common Law Word Mark and xttermite.net, on the one hand, and Plaintiffs' Marks, on the other hand.  On information and belief, Defendants' Common Law Word Mark was not used in commerce prior to 2024 pursuant to the meaning contained within 15 U.S.C. § 1127 of the Lanham Act.

23.     Alongside the registration of the xttermite.net domain name, Defendants created a Mail Exchange ("MX") email server for xttermite.net, allowing Defendants to use email addresses ending in "@xttermite.net."  On information and belief, the "@xttermite.net" email server is active up to the filing date of this action.  In addition to the likelihood of confusion outlined above, the usage of such an email server has the clear potential to confuse potential customers of Plaintiffs, as they may falsely believe that an incoming email from Defendants with an email address ending in "@xttermite.net" is an incoming email from Plaintiffs, whose email addresses end in "@xtermite.com."

/ / /

24.     The website at xttermite.net also features a logo consisting of the words "XT TERMITE CONTROL" beneath an orange slice with two citrus leaves emerging from the top:



(Defendants' "Common Law Design Mark").  Defendants' Common Law Design Mark resembles Plaintiffs' MAN AND ORANGE Mark, as both feature the common lettering "XT," and both feature a design of an orange with two citrus leaves emerging from the top.  When considered in the context of Defendants' providing pest control services and Plaintiff XT-2000 providing pesticides, there is a likelihood of confusion between Defendants' Common Law Design Mark and Plaintiff XT-2000's MAN AND ORANGE Mark.  On information and belief, Defendants' Common Law Design Mark was not used in commerce prior to 2024 pursuant to the meaning contained within 15 U.S.C. § 1127 of the Lanham Act.

25.     On or about June 8, 2024, a pesticide vendor accidentally presented a work order placed by Defendants to an employee of Plaintiff XTERMITE because the pesticide vendor had confused Defendant's Common Law Word Mark with Plaintiffs' XTERMITE Mark.

26.     On or about June 24, 2024, defendant Mr. CHARGUALAF was issued a Company Registration for "XT TERMITE CONTROL" with License Number 9513 by the California Structural Pest Control Board (respectively the "CSPCB" and "CSPCB License").

27.     On or about July 17, 2024, Plaintiffs, via counsel, sent defendant Mr. CHARGUALAF a Cease-and-Desist letter to the business address on the pesticide vendor work order and an email address believed to be that of Defendant Mr. CHARGUALAF's.  Defendant Mr. CHARGUALAF was given until July 24, 2024, to provide a substantive response to the Cease-and-Desist letter.

28.     On or about July 24, 2024, at **2:33 P.M. P.D.T.**, a GoDaddy domain registrar account in the name of defendant Mr. CHARGUALAF registered the domain name of "xttermitecontrol.com."  In obtaining this domain name, defendant Mr. Chargualaf once again made false representations to GoDaddy. Additionally, a website advertising Defendants' services and an MX server for "@xttermitecontrol.com" shortly followed in connection with this domain name. On information and belief, the "@xttermitecontrol.com" email server is active up to the filing date of this action.

29.     The usage of such a domain name and email server once again has the clear potential to confuse potential customers of Plaintiffs, who may falsely believe that the website at xttermitecontrol.com or an email from an address ending in "@xttermitecontrol.com" is in any way associated with Plaintiffs.

30.     The new website at xttermitecontrol.com once again featured Defendants' Common Law Design Mark at the top of the page.  The former website at xttermite.net was replaced with a 404 Error Page, which remains to the date of this action.

31.     On or about July 24, 2024, at **6:16 P.M. P.D.T.**, a person claiming to be defendant Mr. CHARGUALAF emailed Plaintiffs' counsel and stated that he had just received the Cease-and-Desist letter dated July 17, 2024, that day and that he would be "consulting with [his] attorney."  On information and belief, Defendants were not represented by counsel at this time.

32.     On or about July 27, 2024, defendant CHARGUALAFS registered XTCC with the California Secretary of State.  Defendant XTCC was assigned registration number 6323313.  Both Defendants Mr. CHARGUALAF and Ms. CHARGUALAF were named as directors of the entity.

33.     On or about August 16, 2024, Plaintiffs filed a Complaint (the "UDRP Complaint") with the WIPO Arbitration and Mediation Center ("AMC") pursuant to the Uniform Domain Name Dispute Resolution Policy (the "UDRP")

alleging that the domain names of xttermite.net and xttermitecontrol.com were registered in "Bad Faith" pursuant to the meaning contained within the UDRP and demanding their immediate transfer to Plaintiffs.

34.     Upon filing the UDRP Complaint, the dispute concerning xttermite.net and xttermitecontrol.com was assigned AMC Case Number D2024-3383 (the "UDRP Proceeding").  Upon the filing date of this action, a decision has not been issued in the UDRP Proceeding.  Upon filing this action, Plaintiffs intend to notify the UDRP of this action.

35.     The AMC and GoDaddy confirmed that defendant Mr. CHARGUALAF is listed as the domain name registrant of xttermite.net and xttermitecontrol.com.

36.     On or about August 20, 2024, a person from the email address associated with Mr. CHARGUALAF's Go Daddy Account emailed Plaintiffs' counsel directly and stated that the CSPCB had "provided" Defendants with the name "XT TERMITE CONTROL."  In reality, the name "XT TERMITE CONTROL" is the name Defendants had chosen for their application with CSPCB and, in registering and using such a name, Defendants violated 16 California Code of Regulations ("C.C.R.") § 1999.5, which explicitly prohibits unfair or deceptive claims being used in connection with Structural Pest Control.  Furthermore, none of this would in any way absolve Defendants of the various violations of the federal Lanham Act contained within this action.

37.     On or about August 22, 2024, a person claiming to be defendant Mr. CHARGUALAF emailed the AMC and alleged that Defendants had received a "threatening message" via a chat box, presumably on xttermitecontrol.com.  No further evidence of this "threatening message" ever materialized and Plaintiffs have no knowledge of who is responsible for the alleged message.

38.     In a series of emails dated August 22, 2024, various email addresses associated with Defendants directly emailed the AMC and alleged that the UDRP

Proceeding was "harassment" and accused the AMC of being a "cartel."

39.    On or about August 23, 2024, Plaintiffs' counsel once again emailed defendant Mr. CHARGUALAF, explaining Plaintiffs' position on the relevant facts related to Plaintiffs' Marks and once again asked for contact information for Defendants' counsel.  On information and belief, Defendants were not represented by counsel at this time.

40.    On or about August 23, 2024, responsive to the email from Plaintiffs' counsel, a person identifying herself as defendant Ms. CHARGUALAF sent a series of emails to Plaintiffs' counsel and the AMC making a variety of claims, including that Defendants were permitted to use Defendants' Common Law Word Mark because of the CSPCB contrary to the Lanham Act, and that minor differences between Defendants' Common Law Word Mark and the XTERMITE Mark obviated any probable confusion between the two.

41.    On or about August 28, 2024, defendant Ms. CHARGUALAF spoke with Plaintiffs' counsel over the phone and once again falsely characterized the UDRP Proceeding as "harassment" and refused to transfer the domain names subject to the UDRP Proceeding to Plaintiffs.  On information and belief, Defendants were not represented by counsel at this time.

42.    According to defendant Ms. CHARGUALAF during this call with Plaintiffs' counsel, approximately five days prior a potential customer had called Defendants for extermination services, claiming that they were referred by a neighbor.  When defendant Ms. CHARGUALAF asked if the customer was looking for plaintiff XTERMITE, the customer promptly hung up.

43.    On or about November 6, 2024, Defendants registered the domain name 98termite2875.com and created another website.  On information and belief, "98termite2875" is a phoneword-style representation of the phrase "XTtermiteCTRL." Defendants have once again included Defendants' Common Law Design Mark at the top of the page and have branded the website with

Defendants' Common Law Word Mark.

44.    The former website at xttermitecontrol.com was replaced with a GoDaddy Parking Page, which serves "Pay-Per-Click" style advertisements ("PPC Ads") for third-party pest control companies.  On information and belief, Defendants are nominally profiting from these PPC Ads.

45.    On or about November 24, 2024, defendant CHARGUALAFS registered HATP with the California Secretary of State.  HATP was assigned registration number 6472643.  Both Defendants Mr. CHARGUALAF and Ms. CHARGUALAF were named as directors of the entity.

46.    On or about November 25, 2024, Defendants filed a Statement of Information for XTCC with the California Secretary of State.

# I.

## FIRST CAUSE OF ACTION

### FOR INFRINGEMENT OF REGISTERED TRADEMARK
### (15 U.S.C. § 1114)

**(AS AGAINST DEFENDANTS MR. CHARGUALAF, MS. CHARGUALAF, XTTC, HATP, AND DOES 1 THROUGH 40, INCLUSIVE)**

47.    Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 46, inclusive.

48.    Plaintiffs are the exclusive owners by federal registration of Plaintiffs' Marks and thus Plaintiffs have the exclusive rights to use Plaintiffs' Marks in United States commerce for advertising, promoting, offering for sale, and selling Plaintiffs' respective goods and services set forth above.

49.    Plaintiffs' exclusive rights in Plaintiffs' Marks predate any rights that Defendants could attempt to establish in and to Plaintiffs' Marks.  Plaintiffs' Marks are fanciful, arbitrary, or otherwise inherently distinctive when used in connection with Plaintiffs' respective goods and services set forth above. Moreover, Plaintiffs' Marks identify Plaintiffs as the exclusive sources of the services and/or goods set forth above offered under Plaintiffs' Marks and,

COMPLAINT

therefore, said marks have acquired further distinctiveness.

50. Defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, are using a common law trademark in the form of "XT TERMITE" being nearly identical to and a combination of elements of the XTERMITE Mark and XT-2000 Mark. Defendants are using the term "XT TERMITE" in commerce to advertise, promote, offer for sale, and/or sell said Defendants' pest control services, which overlap with Plaintiffs' respective goods and services related to pesticides and pest control services.

51. Said Defendants are using a common law trademark in the form of Defendants' Common Law Design Mark, being nearly identical to and a combination of elements of Plaintiffs' Marks. Defendants are using the Common Law Design Mark in commerce to advertise, promote, offer for sale, and/or sell said Defendants' pest control services, which overlap with Plaintiffs' respective goods and services related to pesticides and pest control services.

52. Said Defendants' use of Plaintiffs' Marks in commerce, in connection with the advertising, promotion, offering for sale, and/or sale of Defendants' competing services and/or goods has caused, is causing, and will likely continue to cause, consumer confusion, mistake, and/or deception about whether said Defendants are Plaintiffs, are affiliates of Plaintiffs, or are licensees or authorized distributors of Plaintiffs' services and/or goods when they are not.

53. Said Defendants' use of Plaintiffs' Marks in commerce, in connection with the advertising, promotion, offering for sale, and/or sale of said Defendants' competing services and/or goods, as alleged herein, has caused, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether said Defendants and/or said Defendants' competing services and/or goods are affiliated, connected, and/or associated with Plaintiffs and/or Plaintiffs' services and/or goods as set forth above when they are not.

54. Said Defendants' use of the Plaintiffs' Marks in commerce on, for,

and/or in connection with the advertising, promotion, offering for sale, and/or sale of said Defendants' competing services and/or goods, as alleged herein, has caused, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether said Defendants and/or said Defendants' competing services and/or goods originate with, are sponsored, endorsed, or approved by, and/or offered under a license from, Plaintiffs, or vice versa, when they are not.

55.    Plaintiffs have not consented to the use of Plaintiffs' Marks by said Defendants.

56.    Based on Plaintiffs' longstanding and continuous prior use of Plaintiffs' Marks in United States commerce, the federal registration of Plaintiffs' Marks, and defendant Mr. CHARGUALAF's employment with Plaintiffs, Defendants had actual and constructive knowledge of Plaintiffs' superior rights in and to Plaintiffs' Marks when said defendants began using Plaintiffs' Marks as part of their bad faith scheme to confuse and deceive consumers, as alleged herein.

57.    Said defendants adopted and used Plaintiffs' Marks in furtherance of said Defendants' willful, deliberate, and bad faith scheme of exploiting the extensive consumer goodwill, reputation, and commercial success of services and/or goods that Plaintiffs offer under Plaintiffs' Marks.

58.    On information and belief, said Defendants have made, and will continue to make, substantial profits and gains from their unauthorized use of Plaintiffs' Marks, to which said Defendants are not entitled at law or in equity.

59.    On information and belief, said Defendants' acts and conduct complained of herein constitute trademark infringement in violation of 15 U.S.C. § 1114(a).  Said Defendants' unlawful actions have caused and are continuing to cause unquantifiable damage to Plaintiffs.  Plaintiffs have suffered, and will continue to suffer, irreparable harm from said Defendants' acts and conduct

COMPLAINT

complained of herein unless restrained by judicial decree.  Plaintiffs have no adequate remedy at law.

## II.

### SECOND CAUSE OF ACTION

**FOR UNFAIR COMPETITION, FALSE ASSOCIATION, AND FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)**

**(AS AGAINST DEFENDANTS MR. CHARGUALAF, MS. CHARGUALAF, XTTC, HATP, AND DOES 1 THROUGH 40, INCLUSIVE)**

60.     Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 59, inclusive.

61.     The acts and conduct complained of herein by defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, constitute unfair competition, false association, and/or false designation of origin in violation of 15 U.S.C. § 1125(a)(1)(A).

62.     Said Defendants' use of Plaintiffs Trademarks to advertise, market, offer for sale, and/or sell their competing services and/or goods to customers who search on the internet for Plaintiffs and their services and/or goods constitutes unfair competition in violation of 15 U.S.C. § 1125(a)(1)(A).

63.     In creating a series of pest control websites containing branding and/or domain names that are confusingly similar to Plaintiffs' Marks for overlapping categories of goods and services, said Defendants have falsely held themselves out to be agents of and/or authorized by Plaintiffs to sell and/or distribute Plaintiffs' branded services and/or goods, when this is not the case.

64.     Said Defendants' use of Plaintiffs' Marks in commerce, in connection with the advertising, promotion, offering for sale, and/or sale of defendants' competing services and/or goods, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether said defendants are Plaintiffs, are affiliates of Plaintiffs, or are licensees or authorized

distributors of Plaintiffs' services and/or goods when they are not.

65.    Said Defendants' use of Plaintiffs' Marks in commerce, in connection with the advertising, promotion, offering for sale, and/or sale of said defendants' competing services and/or goods, as alleged herein, has caused, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether said Defendants and/or said Defendants' competing services and/or goods are affiliated, connected, and/or associated with Plaintiffs and/or Plaintiffs' services and/or goods as set forth above when they are not.

66.    Said Defendants' use of Plaintiffs' Marks in commerce on, for, and/or in connection with the advertising, promotion, offering for sale, and/or sale of said Defendants' competing services and/or goods, as alleged herein, has caused, is causing, and is likely to continue causing, consumer confusion, mistake, and/or deception about whether said Defendants and/or said Defendants' competing services and/or goods originate with, are sponsored, endorsed, or approved by, and/or offered under a license from, Plaintiffs, or vice versa, when they are not.

67.    Plaintiffs have sustained injury and damage caused by the said Defendants' conduct.  Plaintiffs have suffered, and will continue to suffer, irreparable harm from said Defendants' acts and conduct complained of herein, unless restrained by judicial decree.  Plaintiffs have no adequate remedy at law.

### III.

### <u>THIRD CAUSE OF ACTION</u>

### FOR CYBERPIRACY
### (15 U.S.C. § 1125)

#### (AS AGAINST DEFENDANTS MR. CHARGUALAF, MS. CHARGUALAF, XTTC, HATP, AND DOES 1 THROUGH 40, INCLUSIVE)

68.    Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 67, inclusive.

69.    As alleged herein, Plaintiffs' Marks are inherently distinctive.

70.     On information and belief, defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, are individually or collectively the current registrants of record for xttermite.net and xttermitecontrol.com.

71.     At the time said Defendants registered, acquired, and/or began using xttermite.net and xttermitecontrol.com, Plaintiffs had obtained prior and exclusive rights in Plaintiffs' Marks.

72.     At the time said Defendants registered, acquired, and/or began using xttermite.net and xttermitecontrol.com, said Defendants had no rights, title, license, or legitimate interest in Plaintiffs' Marks.

73.     The domain names xttermite.net and xttermitecontrol.com do not consist in any way of the legal name of any defendant or their brand. Furthermore, xttermite.net and xttermitecontrol.com are identical to, and/or confusingly similar to, Plaintiffs' Marks.

74.     Said Defendants registered, acquired, and/or used xttermite.net and xttermitecontrol.com possessing a bad faith intent to profit from Plaintiffs' Marks.

75.     Said Defendants' activities as alleged herein violate the federal Anticybersquatting Consumer Protection Act codified at 15 U.S.C. § 1125(d)(1). Said Defendants have no *bona fide* noncommercial or fair use of Plaintiffs' Marks.  Said Defendants intended to divert consumers away from Plaintiffs by using the infringing Domains to harm the goodwill represented by Plaintiffs' Marks for commercial gain, and with the intent to create a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of xttermite.net and xttermitecontrol.com.

76.     These acts have caused and will continue to cause irreparable injury to Plaintiffs.  Plaintiffs have no adequate remedy at law and they have been and continue to be damaged in an amount yet to be determined.

77.     In the alternative, Plaintiffs are entitled to statutory damages of up to

COMPLAINT

$100,000 *per domain name* because said Defendants' cybersquatting through the infringing Domains was willful under 15 U.S.C. § 1117(d).

78.    The infringing Domains and any other domain name owned and/or controlled by said Defendants that contains Plaintiffs' Marks or colorable imitation thereof should be transferred to Plaintiffs pursuant to 15 U.S.C. § 1125(d)(1)(C).

## IV.

### FOURTH CAUSE OF ACTION

### FOR UNFAIR COMPETITION
### (CALIFORNIA BUSINESS & PROFESSIONS CODE § 17200)

#### (AS AGAINST DEFENDANTS MR. CHARGUALAF, MS. CHARGUALAF, XTTC, HATP, AND DOES 1 THROUGH 40, INCLUSIVE)

79.    Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 78, inclusive.

80.    Plaintiffs allege that defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, violated Business and Professions Code ("B&P") § 17200, also known as the Unfair Competition Law ("UCL"), by engaging in unlawful, unfair, and fraudulent business acts and practices to the detriment of the general public. Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair competition. Plaintiffs bring this action for themselves, and as a representative action on behalf of the general public pursuant to C.C.P. § 382 and B&P § 17203.

81.    Said Defendants have committed: unlawful acts as described hereinabove; unfair acts that offend established public policies including, but not limited to, those reflected by the Lanham Act; and other fraudulent and deceptive acts and practices (such as falsely registering the Domains) as pled hereinabove. In particular, obtaining a FBN does not authorize violations of the rights of others per B&P § 14418, including, but not limited to, trademark rights, and any such unauthorized use is subject to restraint by injunction per B&P § 14402.

82.    Said unlawful, unfair, and fraudulent acts, and others, allow said Defendants an unfair advantage over their respective competitors who obey the law and engage in fair competition, have deceived and are likely to continue to deceive the general public, and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to consumers and the general public.  Said unlawful, unfair, and fraudulent acts, and others, are ongoing and will continue unless enjoined by this Court.

83.    Plaintiffs will further seek appointment of a receiver, disgorgement and/or restoration of money and/or property acquired by means of such unfair competition, as well as reasonable attorney's fees under C.C.P. § 1021.5 and the common fund and/or substantial benefit doctrines.

## V.

## FIFTH CAUSE OF ACTION

### FOR FALSE ADVERTISING
### (CALIFORNIA BUSINESS & PROFESSIONS CODE § 17500)

#### (AS AGAINST DEFENDANTS MR. CHARGUALAF, MS. CHARGUALAF, XTTC, HATP, AND DOES 1 THROUGH 40, INCLUSIVE)

84.    Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 83, inclusive.

85.    Plaintiffs allege that defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, violated B&P § 17500 of the UCA (incorporated by reference in B&P § 17200) by making and/or disseminating and/or causing to be made or disseminated before the public false and misleading statements.  These false and misleading statements include, but are by no means limited to, those contained in the GENERAL ALLEGATIONS section above and the FIRST through FOURTH causes of action herein, which are hereby incorporated by this reference.  Plaintiffs have suffered injury in fact and have lost money or property as a result of such unfair competition and false advertising.

86.     Plaintiffs bring this action for themselves, and as a representative action on behalf of the general public pursuant to C.C.P. § 382 and B&P § 17203. Said false and misleading statements, and others, are ongoing and will continue unless enjoined by this Court.  Plaintiffs will further seek any other available remedies or relief, including, but not limited to, appointment of a receiver, disgorgement and/or restoration of money and/or property acquired by means of such unfair competition and false advertising, as well as reasonable attorney's fees under C.C.P. § 1021.5 and the common fund and/or substantial benefit doctrines.

## VI.

## SIXTH CAUSE OF ACTION

## FOR UNJUST ENRICHMENT

### (AS AGAINST DEFENDANTS MR. CHARGUALAF, MS. CHARGUALAF, XTTC, HATP, AND DOES 1 THROUGH 40, INCLUSIVE)

87.     Plaintiffs incorporate and reallege by this reference each and every allegation set forth hereinabove in paragraphs 1 through 86, inclusive.

88.     By engaging in the acts described above, defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, have and will continue to benefit from their wrongdoing and have been unjustly enriched by reaping the benefits of their unlawful, unfair, and fraudulent activities to the damage and irreparable harm of Plaintiffs.

89.     The circumstances presented here are such that it would be inequitable for said defendants to retain the benefits received from the actions described herein without repaying the lost value to Plaintiffs.

## JURY TRIAL DEMANDED

90.     Pursuant to Federal Rules of Civil Procedure, Rule 38, Plaintiffs demand a trial by jury of all issues so triable in this action.

/ / /

COMPLAINT

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against defendants, and each of them, and in favor of Plaintiffs as follows:

1.    Enter judgment in favor of Plaintiffs and against defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, on all causes of action;

2.    Enter a preliminary injunction and a permanent injunction restraining defendants Mr. CHARGUALAF, Ms. CHARGUALAF, XTTC, HATP, and DOES 1 through 40, inclusive, and their respective officers, directors, employees, agents, affiliates, successors, assigns, and all those in privity or acting in concert with them:

    a.    That said defendants, and each of them, cease in any way using, displaying, advertising, copying, imitating, or infringing upon the XTERMITE Mark, the XT-2000 Mark, the MAN AND ORANGE Mark or any other trademarks or service marks owned by Plaintiffs;

    b.    That said defendants, and each of them, cease, desist, and refrain from registering, renewing, and/or using any domain names, including the ones listed above, which contain and/or resemble the marks "xtermite," "xt-2000," or any variation thereof that in any way resembles a trademark or service mark owned by Plaintiffs;

    c.    That said defendants, and each of them, cease, desist, and refrain from registering any additional domain names which contain and/or resemble the marks "xtermite," "xt-2000," or any variation thereof that in any way resembles a trademark owned by Plaintiffs;

    d.    That said defendants, and each of them, cease, desist, and refrain from accessing, retrieving, using, copying, deleting, destroying, altering, transmitting, or disseminating any of Plaintiffs' information or property.

e. From using or displaying Plaintiffs' Marks, or any other trademarks or service marks owned by Plaintiffs, or confusingly similar variations thereof, in any written or oral advertisements, displays, signs, sales promotions, reservations, the Internet, or in any other public communication in connection with the sale of Defendants' products and/or services;

f. From otherwise infringing upon Plaintiffs' Marks; and

g. From unfairly competing with Plaintiffs.

3. Order said defendants to account for and pay to Plaintiffs all gains, profits, and savings derived from their unlawful, unfair, and fraudulent business practices;

4. Order said defendants to pay Plaintiffs the damages sustained by Plaintiffs as a result of their wrongful conduct;

5. Order said defendants to pay Plaintiffs punitive damages for all claims for relief to which such damages are authorized by law;

6. Order said defendants to pay increased or other statutory damages for all claims for relief to which such treble or statutory damages are authorized by law;

7. Order said defendants to pay Plaintiffs their attorney's fees and costs incurred in connection with this action;

8. Order pre-judgment and post-judgment interest at the maximum legal rate;

9. Order said defendants to pay Plaintiffs restitution for all claims for relief to which restitution is authorized;

10. Order said defendants to disgorge all improper benefits, profits, and gains;

11. For injunctive relief, appointment of a receiver, restitution, disgorgement, and/or restoration of money and/or property acquired by means of

unfair competition pursuant to B&P § 17203; and

      12.  Order such other and further relief as the Court deems just and proper.

Dated:  December 12, 2024              ARC IP LAW, PC

                                By:   /s/ Danna J. Cotman
                                        Danna J. Cotman, Esq. (SB# 188245)
                                        5749 La Jolla Boulevard
                                        La Jolla, CA 92037

                                        Attorneys for Plaintiffs
                                        XTERMITE, INC.
                                        and XT 2000, Inc.

COMPLAINT